## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

KARA D.,

        *Plaintiff,*

  vs.
                                            Case No. 20-CV-1020-EFM

ANDREW M. SAUL,
Commissioner of Social Security,

        *Defendant.*

## MEMORANDUM AND ORDER

Plaintiff, Kara D., seeks review of a final decision by Defendant, the Commissioner of Social Security, denying her application for disability insurance benefits under the Social Security Act. Because the administrative decision was supported by substantial evidence in the record, the Court affirms the Commissioner's denial of benefits.

### I.      Factual and Procedural Background

On July 28, 2017, Plaintiff filed applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Insurance, alleging disability beginning February 24, 2017, due to herniated disc, sciatica, degenerative disc disease, restless leg syndrome, fibromyalgia, and nerve damage in the arms and legs. Plaintiff's applications were denied initially on November 22, 2017, and on reconsideration on March 12, 2018. After a hearing held October 11, 2018,

Administrative Law Judge David Page ("the ALJ") issued an order on December 27, 2018, concluding that Plaintiff was not disabled. The Appeals Council denied review on November 22, 2019.

On November 4, 2016, Plaintiff was treated by Mark Basham, M.D., for back pain and intermittent numbness and constant tingling from her hips to her toes. She reported having helped lift a couch two weeks prior to the visit. Dr. Basham prescribed tramadol. Four days later, an MRI revealed mild L4-5 and moderate L5-S1 disc desiccation, suggestion of an annular fissure/tear in L4-5, and a small bulge at L5-S1 slightly flattening the ventral sac, contacting the nerve root in the left lateral recess. On November 18, 2016, Dr. Basham prescribed a back brace.

In December 2016, Dr. Basham diagnosed Plaintiff with fibromyalgia, daily headaches, and issues of weight management. In January 2017, Plaintiff reported neck pain with popping with movement to Dr. Basham. He assessed cervical muscle spasms and neck sprains, and prescribed Flexeril. In February 2017, Dr. Basham noted lumbar pain and prescribed oxycodone, baclofen, and amitriptyline. In March 2017, Plaintiff reported low back pain, with a level of 6 to 8.5 of 10, reduced to 5 of 10 on medication. She reported that she was able to do dishes and laundry, but that she had trouble taking a shower. Dr. Basham increased Plaintiff's dosage of amitriptyline.

In April 2017, it was noted that Plaintiff had tried two lumbar epidural steroid injections without relief. In May 2017, Plaintiff saw orthopedist Gerard Librodo, M.D., reporting that she had done three sessions of physical therapy, but had stopped due to pain. She also reported that her pain was at a 7 of 10, with intermittent pain, constant at times, worse in the early morning and evenings. Dr. Librodo assessed sacral dysfunction, bilateral sacroiliitis, sacroiliac joint dysfunction, facet joint syndrome, lumbar disc degeneration, and annular tear of lumbar disc.

Finally, a physical therapy discharge note dated June 2017 stated that the physical therapist had observed diffuse pain in the spine and extremities, aggravation with weight shifting and sitting, and abdominal weakness.  It also noted that Plaintiff had reported that her soreness increased after her previous physical therapy appointment.

There is no evidence in the record that Plaintiff sought medical treatment from July through September of 2017.  In October 2017, Dr. Basham conducted a physical assessment at Plaintiff's request.  Dr. Basham opined that Plaintiff could sit for four hours in an eight-hour workday and stand/walk for four hours in an eight-hour workday.  He noted that Plaintiff could occasionally lift ten pounds, never twenty, and that she could use her hands for grasping/turning/twisting objects only twenty-five percent of the workday, and that she could not use her arms for reaching.  He also opined that Plaintiff would likely be absent due to her impairments or treatments three or four times per month.  He further noted tenderness and limited motion in the lumbar spine and assessed low back pain.

On November 4, 2017, Macy L. Rupprecht, D.O., conducted a consultative evaluation of Plaintiff.  She noted that Plaintiff had a slow, hunched-over gait, but that Plaintiff did not present with an assistive device.  Although Dr. Rupprecht noted that Plaintiff had no palpable muscle spasms and that her muscle bulk and tone were within normal limits, Dr. Rupprecht rated Plaintiff's muscle strength as 4 out of 5 on all upper and lower extremities.  Dr. Rupprecht noted that there was no joint swelling, erythema, effusion or deformity.  Further, Plaintiff's hands and fingers appeared normal, and Plaintiff was able to button and unbutton a shirt, pick up and grasp a pen to write a sentence, and lift, carry, and handle personal belongings.

In November 2017, Dr. Mininder Kaur, M.D., a state agency reviewing medical consultant, opined that Plaintiff could stand or walk about six hours in an eight-hour workday and sit for about

six hours in an eight-hour workday.  Dr. Kaur noted that the findings from Dr. Rupprecht's November exam could not be explained by physiological processes and that Plaintiff's "degree of pain can not be explained by normal exams by TS and absence of treatment after 8/2017."[1]   Dr. Kaur further noted that Plaintiff had "not exhausted all of her treatment options and with proper compliance to therapy she should be able to work within the limitations set in the RFC."[2]

On March 8, 2018, state agency reviewing consultant Libbie Russo, M.D., noted that Plaintiff's statements about the intensity, persistent, and functionally limiting effects of her symptoms were not substantiated by the objective medical evidence alone.  She noted Plaintiff's ADLs, medication treatment, treatment other than medication, longitudinal treatment records, and lack of treatment-seeking behavior as the most informative factors in assessing the consistency of Plaintiff's statements about her symptom-related limitations with all the evidence in the file.  Dr. Russo agreed with Dr. Kaur's assessment of Plaintiff's exertional limitations, and suggested Plaintiff's maximum sustained work capability would be light work.  It appears from the medical record that Plaintiff did not again seek medical treatment until June 2018 for a skin rash.[3]

After reviewing Plaintiff's record, the ALJ concluded that Plaintiff had degenerative disc disease, fibromyalgia, and obesity.  He also concluded, however, that the severity of Plaintiff's impairments did not meet or equal the Social Security Administration's designated list of impairments.  As such, he found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the limitation

---

[1] SSA R., Doc. 11, p. 79.

[2] *Id.*

[3] SSA R., Doc. 11., p. 509.

that she can lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently.  Further, he found that Plaintiff "can stand/walk 20 minutes at a time for a total of 4 hours in an 8-hour workday, as well as sit for one hour at a time for a total of 6 hours in an 8-hour workday with normal breaks."[4]  She "can occasionally climb ramps and stairs, but should never climb ladders, ropes or scaffolds," and "can occasionally stoop, kneel, crouch, and crawl."[5]

In so concluding, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[6]  He then found that while Plaintiff is unable to perform any past relevant work, her RFC permits her to perform other work existing in significant numbers in the national economy, including work as an information clerk, a table worker, or a document preparer.

Plaintiff now argues that the ALJ's RFC determination and assessment of Plaintiff's subjective complaints were not supported by substantial evidence.

## II.    Legal Standard

Judicial review under 42 U.S.C. § 405(g) is limited to whether the defendant's decision is supported by substantial evidence in the record as a whole and whether the defendant applied the correct legal standards.[7]  "Substantial evidence is more than a scintilla, but less than a preponderance; in short, it is such evidence as a reasonable mind might accept to support the

---

[4] SSA R., Doc. 11, at 27–28.

[5] *Id.* at 28.

[6] *Id.* at 28.

[7] *See Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

conclusion."[8]  The Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."[9]

An individual is disabled under the Social Security Act only if she can "establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months."[10]  This impairment "must be severe enough that she is unable to perform her past relevant work, and further cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience."[11]  The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.[12]  If it is determined at any step of the evaluation process that the claimant is or is not disabled, further evaluation under a subsequent step is unnecessary.[13]

The first three steps of the sequential evaluation require the ALJ to assess: (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments.[14]  If the impairment does not meet or equal one of these designated impairments, the ALJ must then determine the

---

[8] *Barkley v. Astrue*, 2010 WL 3001753, at *1 (D. Kan. 2010) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)).

[9] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[10] *Brennan v. Astrue*, 501 F. Supp. 2d 1303, 1306–07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)).

[11] *Barkley*, 2010 WL 3001753, at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002); 20 C.F.R. § 416.920 (2005)).

[12] *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 404.1520(a).

[13] *Barkley*, 2010 WL 3001753, at *2.

[14] *Lax*, 489 F.3d at 1084 (citations omitted); *see also Barkley*, 2010 WL 3001753, at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

claimant's RFC, which is the claimant's ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments."[15]

After assessing the claimant's RFC, the ALJ continues to steps four and five, which require the ALJ to determine whether the claimant can perform her past relevant work, and if not, then whether she can generally perform other work that exists in the national economy.[16]  The claimant bears the burden in steps one through four to prove a disability that prevents the performance of her past relevant work.[17]  The burden then shifts to the Commissioner at step five to show that, despite her alleged impairments, the claimant can perform other work in the national economy.[18]

### III.    Analysis

Plaintiff submits two bases for reversal to the Court: (1) that the ALJ's RFC determination is not supported by substantial evidence because he failed to either appropriately consider Dr. Basham's treating opinion or recontact him; and (2) that the ALJ's assessment of her subjective complaints is not supported by substantial evidence.  The Court concludes that neither argument merits reversal.

### A.    The ALJ Appropriately Considered Dr. Basham's Treating Opinion and Was Not Required to Recontact Him

Plaintiff first argues that the ALJ failed to appropriately consider Dr. Basham's treating opinion.  Essentially, Plaintiff asserts that the ALJ should have concluded—based on certain aspects of Dr. Basham's opinion—that a more limited RFC than the ALJ's conclusion of sedentary with additional postural limitations was appropriate.  Within that overarching argument, Plaintiff

---

[15] *Barkley*, 2010 WL 3001753, at *2 (citation omitted); *see also* 20 C.F.R. §§ 404.1520(e), 404.1545.

[16] *Barkley*, 2010 WL 3001753, at *2 (citing *Williams*, 844 F.2d at 751).

[17] *Lax*, 489 F.3d at 1084 (citation omitted).

[18] *Id.* (citations omitted).

argues that the ALJ: (1) failed to properly analyze factors guiding the weight to be given medical opinions; (2) should have re-contacted Dr. Basham with any concerns he had about Dr. Basham's opinion; and (3) improperly crafted an RFC less restrictive than Dr. Basham's recommendation.

### 1.    The ALJ Gave Proper Weight to Dr. Basham's Opinion

Plaintiff asserts that the ALJ erred in failing to discuss factors outlined in 20 C.F.R. §§ 404.1520c(c)(3)-(5) and 416.920c(c)(3)-(5), contrary to 20 C.F.R. §§ 404.1520c(b)(3) and 416.920c(b)(3).  These factors include consideration of the physician's relationship with the claimant, specialized training or education completed by the physician, and other factors tending to make a medical opinion more persuasive.  Plaintiff argues that due to the similarity of the weight that the ALJ gave each medical opinion, the ALJ was required to discuss those factors.  This is an incorrect statement of the regulations, however.  Although 20 C.F.R. §§ 404.1520c and 416.920c provide that an ALJ must consider the factors outlined in subsection (c)(1)-(5),[19] the regulations also provide that an ALJ is "not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5) of this section . . . ."[20]

Further, §§ 404.1520c(b)(3) and 416.920c(b)(3) provide: "[w]hen we find that two or more medical opinions . . . are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) . . . ."  Thus, although an ALJ must consider the factors

---

[19] 20 C.F.R. §§ 404.1520c, 416.920c (outlining factors applicable to claims filed on or after March 27, 2017); *see also Hamlin*, 365 F.3d at 1215 ("An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion.") (referring to factors outlined in 20 C.F.R. § 404.1527(d)(2)-(6) applicable to claims filed before March 27, 2017).

[20] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Terri Ann B. v. Saul*, 2020 WL 7316099, at *6 (D. Kan. 2020).

enumerated in §§ 404.1520c(c)(1)-(5) and 416.920c(c)(1)-(5), an ALJ is not required to articulate how he or she considered the factors unless the ALJ first finds that the medical opinions are equally well-supported and consistent with the record.

Here, it is clear that the ALJ did not find Dr. Basham's opinion to be consistent with the record. The ALJ noted that despite Dr. Basham's assessment that Plaintiff could sit/stand/walk for only four hours in an eight-hour workday, Plaintiff had not exhibited any diminished motor strength, muscle atrophy, or marked limitations in range of motion prior to Dr. Basham authoring his opinion.[21] The ALJ further cited to evidence in the medical record that Plaintiff had demonstrated normal sensation, strength, and reflexes, as well as presenting with a negative straight-leg raise.[22] Finally, he noted that Dr. Basham's treatment of Plaintiff did not demonstrate aggressiveness which indicated Plaintiff's alleged degree of impairment.[23] Thus, the ALJ did not find Dr. Basham's opinion to be consistent with the record and was not required to articulate how he considered factors (c)(3)-(5).

2. *The ALJ Was Not Required to Recontact Dr. Basham*

Plaintiff next argues that the ALJ could have re-contacted Dr. Basham to resolve any concerns that he had. The Court concludes the ALJ was not required to recontact Dr. Basham. Although the regulations once required an ALJ to recontact a treating physician if the information provided by the physician was inadequate to determine whether the claimant was disabled,[24] the

---

[21] SSA R., Doc. 11, p. 29-30.

[22] *Id.* at 29.

[23] *Id.* at 30.

[24] *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001), *as amended on denial of reh'g* (2002) (citing 20 C.F.R. § 16.912(e)).

regulations now state: "If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency."[25]  As discussed above, it is clear from the ALJ's decision that he did not find the information provided by Dr. Basham to be insufficient, but rather, found Dr. Basham's opinion to be inconsistent with the medical record.  Plaintiff's argument that the ALJ should have re-contacted Dr. Basham is therefore without merit.

       3.     *An ALJ's RFC May Differ from the Recommendations of the Treating Physician*

Finally, Plaintiff argues that because Dr. Basham opined that Plaintiff could sit for four hours in an eight-hour workday, and stand/walk for four hours in an eight-hour workday, Plaintiff cannot meet the requirements of sedentary work, nor can she meet the requirements of light work. It is the ALJ, not a physician, however, who "is charged with determining a claimant's RFC from the medical record."[26]  Unlike a singular medical opinion, the RFC assessment "describes an adjudicator's finding about the ability of an individual to perform work-related activities" and "is based upon consideration of all relevant evidence in the case record."[27]  Thus, "[a] medical source statement must not be equated with the administrative finding known as the RFC assessment."[28] As discussed above, the ALJ provided sufficient analysis for his reasoning in partially rejecting

---

[25] 20 C.F.R. § 404.1520b(c); 20 C.F.R. § 416.920b(c).

[26] *Chapo v. Astru*e, 682 F.3d 1285, 1288 (10th Cir. 2012) (citation omitted); *see also* 20 C.F.R. § 416.946; 20 C.F.R. § 404.1546.

[27] *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (quoting SSR 96-5p, 1996 WL 374183, at *5 (1996)).

[28] *Id.*

Dr. Basham's assessment of Plaintiff's ability to work.  The Court will not reject the ALJ's RFC assessment solely because it does not mirror Dr. Basham's recommendation.

**B.     The ALJ's Assessment of Plaintiff's Subjective Complaints Is Supported by Substantial Evidence**

Plaintiff next takes issue with the ALJ's assessment of Plaintiff's subjective complaints. Plaintiff argues that the ALJ—contrary to 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2)— rejected her statements about the intensity and persistence of her pain and the effect that her symptoms have on her ability to work without considering factors beyond the objective medical evidence.  Although Plaintiff is correct that the ALJ must consider other listed factors such as Plaintiff's daily activities; the location, duration, frequency, and intensity of her symptoms; precipitating and aggravating factors; effectiveness and side effects of medications; and other treatment measures taken,[29] an ALJ "is not required to discuss every piece of evidence."[30]

Here, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[31]  He noted that although the medical records showed that Plaintiff does have some physical impairments resulting in "significant functional limitations," the evidence "does not indicate that the claimant's conditions result in debilitating functional limitations."[32]  In so concluding, the ALJ noted that Plaintiff had undergone epidural steroid

---

[29] 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

[30] *Wall v. Astrue*, 561 F.3d 1048, 1067 (10th Cir. 2009) (citation and quotation omitted).

[31] SSA R., Doc. 11, p. 28.

[32] *Id.*

injections and that there had been indication of surgery.  Further, the ALJ explicitly stated that he was taking into account Plaintiff's imaging, testimony, and treatment history with Dr. Basham. He also noted that he considered Plaintiff's testimony, as well as her limited range of motion and stenosis, in determining that greater restrictions than those suggested by Dr. Kaur were warranted. Thus, the Court concludes that the ALJ sufficiently considered the factors outlined in 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) in weighing Plaintiff's subjective complaints.

Moreover, ALJs are entitled to "particular deference" as they are "uniquely able to observe the demeanor and gauge the physical abilities of the claimant."[33]   After reviewing the administrative record and underlying decision, the Court concludes that the ALJ applied the correct legal standards and that his factual findings are supported by substantial evidence.  The ALJ supported his decision with more than a scintilla of evidence and a reasonable mind would accept his conclusion.  As such, the Court denies Plaintiff's appeal and affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERED**.

This case is closed.

Dated this 19th day of January, 2021.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[33] *White*, 287 F.3d at 910.

-12-